IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-02538-WJM-MEH

CESAR RYAN MARQUEZ,

      Plaintiff,

v.

DR. DARREN LISH,

      Defendant.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge.**

      This action arises out of the incarceration of Plaintiff Cesar Ryan Marquez ("Marquez"), an inmate at all relevant times in the Colorado Department of Corrections system. Marquez proceeds in this action *pro se* and alleges against the Defendant, Dr. Darren Lish ("Lish"), a violation of his Eighth Amendment right against Defendant's deliberate indifference to his serious need for medical care. In response, Lish filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) [filed November 6, 2018; ECF No. 21]. Finding that the Court lacks subject matter jurisdiction due to Marquez's lack of constitutional standing, this Court respectfully recommends that the Honorable William J. Martinez grant in part and deny in part Lish's motion as set forth herein.

## BACKGROUND

### I.    Statement of Facts

      The following are relevant factual allegations (as opposed to legal conclusions, bare assertions, or merely conclusory allegations) made by Marquez in the operative Amended

Complaint,[1] which are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

On or about February 15, 2011, Marquez began serving a nine-year term in the Colorado Department of Corrections ("CDOC"). During that same year, CDOC physicians first recognized and began treating Marquez for a mental health condition by prescribing Wellbutrin. Marquez continued with this treatment until approximately 2015 when the CDOC physicians also prescribed Gabapentin and Remron for Marquez's treatment.

On February 24, 2017, the CDOC transferred Marquez to a community corrections program, "Time to Change," at which Marquez continued to be treated for his mental health condition by a CDOC contractor, Correctional Psychology Associates ("CPA"). CPA staff prescribed the same dosages of the three medications for Marquez's treatment. At some point before October 2017, CPA stopped prescribing the medications citing a CDOC policy, apparently drafted and implemented by Lish, CDOC Chief of Psychiatry, mandating that Wellbutrin, Gabapentin, and Remron be discontinued immediately due to a potential abuse hazard. Within a few days of stopping the medication, Marquez suffered a mental "breakdown" culminating in his "absconding" from the Time to Change program.

## II.     Procedural History

Based on these allegations, Marquez seeks injunctive relief in the form of an order requiring the CDOC to review his need for the above-described medications, to choose what form is to be given Marquez to reduce abuse concerns, and to place Marquez once again in the community

---

[1]The Court informed the parties at a Status Conference on January 14, 2019—before briefing was completed on the present motion—that it would consider the allegations set forth in both the original and Amended Complaints. ECF No. 30.

corrections program.  Am. Compl. 4, ECF No. 7.

In the present motion, Lish contends that Marquez fails to allege the subjective and objective elements necessary to state an Eighth Amendment claim.  Mot. 4-5.  Marquez responds with additional allegations that he has been diagnosed with "multiple mental illnesses" by "several doctors" and was not provided any alternative medication or treatment when the medication stopped; however, the prescriptions have been re-started now that he is at the Boulder County Jail.  He also contends that he was doing well in the program while on the medication, and it "was not until [he] was off [his] medications that everything started falling apart."  Resp. 3.

Although provided the opportunity to do so, Lish did not file a reply in support of the motion.

## LEGAL STANDARDS

### I.      Dismissal under Fed. R. Civ. P. 12(b)(1)

The Supreme Court has instructed that "whenever standing  is unclear, we must consider it *sua sponte* to ensure there is an Article III case or controversy before us."  *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1126 (10th Cir. 2013).  Dismissal for lack of constitutional standing should be granted under Rule 12(b)(1).  *VR Acquisitions, LLC v. Wasatch Cty.*, 853 F.3d 1142, 1146 n.4 (10th Cir. 2017) (citing  *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir. 2011)).

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of subject matter jurisdiction."  Fed. R. Civ. P. 12(b)(1).  Dismissal under Rule 12(b)(1) is not a judgment on the merits of the plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter.  *See Butler v. Kempthorne*, 532 F.3d 1108, 1110 (10th Cir. 2008) (recognizing federal courts are courts of limited jurisdiction and "there is a presumption against our jurisdiction").  A court

lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1016 (10th Cir. 2013). A motion to dismiss under Rule 12(b) "admits all well-pleaded facts in the complaint as distinguished from conclusory allegations." *Smith v. Plati*, 258 F.3d 1167, 1174 (10th Cir. 2001). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Pueblo of Jemez v. United States*, 790 F.3d 1143, 1151 (10th Cir. 2015). Accordingly, Marquez bears the burden in this case of establishing that this Court has jurisdiction to hear his claims. Further, under a 12(b)(1) motion, "a court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts." *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001) (quoting *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995)). In such an instance, "a court's reference to evidence outside the pleadings does not convert the motion into a Rule 56 motion." *Id.*

## II.     Treatment of a Pro Se Plaintiff's Complaint

A federal court must construe a pro se plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted). The Tenth Circuit interpreted this rule to mean, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, this interpretation is qualified in that it is not "the

4

proper function of the district court to assume the role of advocate for the pro se litigant." *Id.* Accordingly, the court must "not supply additional facts, nor...construct a legal theory for plaintiff that assumes facts that have not been pleaded." *Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).

## ANALYSIS

District courts "have an independent obligation to verify that [a plaintiff] has Article III standing to bring its § 1983 claims before proceeding any further." *VR Acquisitions, LLC*, 853 F.3d at 1146 n.3. To demonstrate Article III standing, a plaintiff must plausibly allege an (1) injury in fact, (2) fairly traceable to defendants' conduct, (3) that is redressable by a favorable judicial ruling. *Id.* (citing *Rector v. City & Cty. of Denver*, 348 F.3d 935, 942 (10th Cir. 2003)). Here, the Court finds Marquez lacks constitutional standing to bring his claim for prospective injunctive relief.

Marquez sues Lish only in his official capacity. Am. Compl. 2. Claims against state officials in their official capacities are essentially claims against the state entity. *Ky. v. Graham*, 473 U.S. 159, 165 (1985) ("Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent.") (citation and quotations omitted). It is well-established that "the Eleventh Amendment precludes a federal court from assessing damages against state officials sued in their official capacities because such suits are in essence suits against the state." *Hunt v. Bennett,* 17 F.3d 1263, 1267 (10th Cir. 1994). Absent an unmistakable waiver by a state of its Eleventh Amendment immunity, or an unmistakable abrogation of such immunity by Congress, the Eleventh Amendment provides absolute immunity from suit in federal courts for states and their agencies. *Blatchford v. Native Village of Noatak & Circle Village,* 501 U.S. 775, 785-86 (1991). Thus, an official-capacity lawsuit is appropriate only where the claims

could be sustained against the entity in its own name. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).

The Supreme Court has recognized an exception to the Eleventh Amendment for such actions where plaintiffs seek prospective enforcement of their federal rights. *See Ex parte Young,* 209 U.S. 123, 159-60 (1908). But *Young* makes it clear that this exception "may not be used to obtain a declaration that a state officer has violated a plaintiff's federal rights in the past" or as a means for seeking money damages. *Buchwald v. Univ. of N.M. Sch. of Med.,* 159 F.3d 487, 495 (10th Cir. 1998) (citations and quotations omitted).

In this case, Marquez seeks only prospective injunctive relief against Lish in the form of an order requiring the CDOC to reform its policy concerning "potential abuse" of medications, and to review Marquez's need for certain medications and place him once again in the community corrections program (presumably under the reformed policy). To the extent Marquez plausibly states an Eighth Amendment violation, he has alleged prospective injunctive relief potentially sufficient to overcome Eleventh Amendment immunity. *See id.*

However, Marquez also alleges that he is no longer in the custody of the CDOC but, rather, he is being held in Boulder County Jail on criminal charges stemming from his "absconding" from the Time to Change program. Compl. 6. Marquez "assume[s]" he will be "transferred back into the direct custody of a D.O.C. sponsored institution" upon disposition of the criminal charges, but as of the date of this recommendation, the case docket reflects that Marquez remains housed in Boulder County Jail.[2] Further, nothing in the allegations suggests that the challenged policy remains in effect

_____

[2]Notably, the Complaint was filed on October 24, 2017, more than eighteen months ago, and lists the Boulder County Jail as Marquez's residence. Compl. 13.

at the CDOC, or that Marquez would be subject to it and denied any needed medication should he return there. Moreover, Marquez contends in the briefing that he is currently receiving the medications he needs for his mental illness(es). Resp. 2.

"[I]f a plaintiff seeks injunctive relief based on the threat of future harm, the 'threat of injury must be both real and immediate, not conjectural or hypothetical.'" *Redmond v. Crowther*, 882 F.3d 927, 942 (10th Cir. 2018) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983)). Here, Marquez's allegations establish that any injury necessary to support the relief he requests is merely speculative, and it is neither real nor immediate. Accordingly, the Court recommends that the District Court find Marquez's allegations are insufficient to demonstrate he has Article III standing to seek the requested prospective injunctive relief in this case.

Because the Court lacks subject matter jurisdiction in this case, this Court will not proceed to determine whether Marquez states a plausible violation of the Eighth Amendment against Lish.

## CONCLUSION

In sum, the Court finds that, as Marquez fails to allege constitutional standing necessary to assert an official-capacity claim for prospective injunctive relief, the Court lacks subject matter jurisdiction over Marquez's Eighth Amendment claim against Lish and recommends the claim be dismissed without prejudice.

Therefore, the Court respectfully recommends that Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) [filed November 6, 2018; ECF No. 21] be **granted in part and denied in part** and that the operative Amended Complaint be dismissed without prejudice.[3]

--------

[3]Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those

Respectfully submitted this 13th day of May, 2019, at Denver, Colorado.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge

---

findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual and legal findings of the Magistrate Judge that are accepted or adopted by the District Court. *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)).